UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:12-cr-00107-VLB-1 |
| v. | : | |
| | : | |
| JAMEEL WILKES | : | September 17, 2013 |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS [Dkt. No. 273]

Before the Court is the Defendant Jameel Wilkes' Amended Motion to Suppress his post-arrest statement on the basis that he was not given a *Miranda* warning. [Dkt. No. 273]. The parties agree that the only issue before the court is one of credibility, as they agree that if no *Miranda* warning was given then the statement must be suppressed and there is no applicable exception.

On September 11, 2013 the Court conducted an evidentiary hearing on the Motion to Suppress at which the Defendant Jameel Wilkes, New Haven police officer Daniel Hartnett, and Drug Enforcement Administration Taskforce Officer Anastas Ndrenika testified to the following facts. The Defendant was arrested on May 15, 2012, pursuant to the execution of a search warrant for the premises where he was located and an arrest warrant of his person issued on the basis of evidence gathered after an investigation which involved wiretapped communications for approximately one year. Wilkes was the primary target and is the named defendant in this nine defendant case, one of several prosecutions which resulted from the investigation. The Defendant submitted an affidavit in support of his motion to suppress dated May 4, 2013 in which he avers that "[t]he

police subjected me to questioning upon the execution of a warrant for my arrest even though I was in custody and had not been given my Miranda warnings. Without the benefit of any Miranda warnings, I told the police about my involvement in narcotic activity. I was under constant interrogation from the time the police seized me at my residence until I was taken to the Hamden police station. I was not given any Miranda warnings during this time and was denied my right to counsel." (Paragraph numbers omitted) [Dkt. No. 273]. At the hearing, the first witness, Officer Hartnett, testified that Mr. Wilkes was not interrogated at the location where he was arrested. Rather, Officer Hartnett testified that he was present when Mr. Wilkes was merely informed by Officer Ndrenika why and by whom he was under arrest and asked if he would cooperate.

Mr. Wilkes later testified in contradiction of his sworn affidavit but consistent with the testimony of Officer Hartnett that he was not under constant interrogation from the time the police seized him at his residence. At the hearing Mr. Wilkes testified that he was not interrogated until he was placed in a police vehicle approximately forty (40) minutes after he was first placed under arrest. Mr. Wilkes' credibility was impeached by the inconsistencies in his affidavit and his own testimony.

Mr. Wilkes' testimony was also impeached by the testimony of Taskforce Officer Ndrenika who testified credibly about the events of May 15, 2012. Officer Ndrenika testified to the facts as follows. Scores of individuals were arrested as a result of the investigation. Wilkes was the primary target of the investigation and Ndrenika, as the lead investigator, interrogated Wilkes, who was among the

first individuals arrested.  When Hartnett arrived on the scene on May 15, 2012, he advised Wilkes why and by whom he was being arrested and asked Wilkes if he was willing to cooperate.  Ndrenika recalled that Wilkes responded that he was willing to cooperate.  No further conversation or interrogation took place at 277 Chapel Street where Wilkes was placed in custody.  Although he did not write his report until two months later and took no notes, more than a year later while testifying Ndrenika still had good recall of the events.  Officer Ndrenika testified in detail about the events of May 15, 2012 and insisted that he did issue a *Miranda* warning to Mr. Wilkes at the Hamden Police Department, reading from the *Miranda* warning card he testified he has kept in his wallet for the twenty years he has been a DEA agent.  With the exception of Wilkes' contention that Ndrenika did not *Mirandize* him, Wilkes did not refute any of the other detailed facts to which Ndrenika testified.

Officer Ndrenika and Mr. Wilkes gave testimony tending to explain why Mr. Wilkes would have spoken contrary to his penal interests. They both testified that Officer Ndrenika's curried favor with Mr. Wilkes. They both testified that Wilkes was treated graciously by the officers and that Officer Ndrenika took him to his girlfriend's home to drop off a treasured piece of jewelry before taking him to the Hamden Police Department for interrogation and booking.  Officer Ndrenika's handling led Mr. Wilkes to believe that he would be allowed to go home after cooperating with the police.  Officer Ndrenika testified that Mr. Wilkes claimed he had evidence concerning bigger drug traffickers and information regarding murders.  After admitting his own conduct and disclosing some information, Mr.

Wilkes asked if he could go home. When Officer Ndrenika refused to allow him to go home, Mr. Wilkes stopped speaking.

Finally, the Government offered an audio tape of a recorded conversation between Mr. Wilkes and a reporter after Mr. Wilkes was charged. In the recording, Mr. Wilkes states that he is a rap music promoter and not a gang member and admits to selling marijuana and occasionally a small amount of cocaine. The recorded statements were not corroborative of any of the testimony concerning Mr. Wilkes' custodial statements. Nor were they similarly motivated. The recorded comments did not factor in the conclusion reached by the Court.

Mr. Wilkes' impeachment of his own affidavit, Officer Hartnett's impeachment of Mr. Wilkes' testimony, Officer Ndrenika's impressive recall of events which further impeached both Mr. Wilkes' testimony and his affidavit, and Officer Ndrenika's explanation of Mr. Wilkes' motivation to admit to facts contrary to his penal interests, even after being *Mirandized*, combine to leave the Court with the distinct belief that Mr. Wilkes, laboring under the distress of his arrest, does not clearly recall what transpired on May 15, 2012 and that he does not remember being *Mirandized.* Accordingly, the Defendant's Motion to Suppress is DENIED.

So ordered this 17th day of September, 2013.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge